UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DANIEL G SZMANIA,

                    Plaintiff,

        v.

BANK OF AMERICA HOME LOANS,
INC., (BAC),

                    Defendant.

CASE NO. 11-5330 RJB

ORDER ON MOTIONS

        This matter comes before the Court on Plaintiff's Motion for Summary Judgment (Dkts.

12 and 14), Plaintiff's Motion for Default Judgment (Dkt. 17), BAC Home Loans Servicing,

LP's Motion to Dismiss (Dkt. 15), Plaintiff's Motion to Quash Defendant's Motion to Dismiss

(Dkt. 18), Plaintiff's "Motion for Sanctions" against Defendant's attorney for "fraud in pleadings

upon this Court" (Dkt. 18-2), Plaintiff's Motion for Declaratory Judgment and Permanent

Injunction (Dkt. 13) and Plaintiff's Motion to Compel (Dkt. 22).  The Court has considered the

pleadings filed regarding these motions, the record, and is fully advised.

# I. FACTS AND PROCEDURAL HISTORY

## A. FACTS

The case involves a note and deed of trust related to real property located in Brush Prairie, Washington. Dkt. 1. This is not the Plaintiff's first suit regarding this loan.

On February 8, 2011, the Washington State Court of Appeals, Division II, in an unpublished opinion, affirmed the decision of the Clark County, Washington Superior Court which dismissed Plaintiff's case against Countrywide Home Loans, Inc. *Szmania v. Countrywide Home Loans, Inc.,* 160 Wash.App. 1002 (2011) ("*Szmania I*").

Pursuant to Fed. R. Ev. 201, a court may take judicial notice of "matters of public record," *U.S. v. Corinthian Colleges*, --- F.3d ----, 2011 WL 3524208 (9th Cir. 2011), including court decisions and other "court filings," *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n. 6 (9th Cir. 2006). Accordingly, this Court will take judicial notice of the facts found in *Szmania I* by the Division II of the Washington Court of Appeals:

> On November 3, 2006, Szmania obtained a residential mortgage loan for $787,500.00 from E–Loan, Inc. The loan was secured by a deed of trust against his real property in Brush Prairie, Washington. The deed of trust stated, "Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments ... in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy." Interest on the loan was 6.25 percent per annum until November 30, 2013; thereafter, the interest rate would adjust annually. The first monthly payment, due January 1, 2007, was $4,101.56, plus $785.54 for taxes and insurance.
> On January 19, 2007, Countrywide purchased the loan from E–Loan; this purchase included the adjustable rate note, the deed of trust, and the right to service the loan. Countrywide subsequently pooled and securitized the loan, thus passing title to the loan to EMC Mortgage Corporation trust, but Countrywide retained the servicing rights.
> On June 11, 2008, Szmania both called and sent a letter to Countrywide requesting a loan modification based on economic hardship. Specifically, Szmania requested that Countrywide agree to reduce the interest rate on the loan from 6.25 percent to 3 or 3.25 percent.
> On July 7, [2008] Szmania sent Countrywide another letter requesting that the loan be modified. Szmania enclosed a check for $2,664.16 as his monthly loan

payment in accordance with his proposed loan modification that reduced the interest to 3 percent per annum. Szmania's letter stated that:  BY CASHING AND ACCEPTING THIS CHECK, COUNTRY WIDE FI[ ]ANANCIAL, COUNTRYWIDE HOME LOANS, IT[ ]S AFFIL[I]ATES AND PARTNER[ ]S AND SUBSID[I]AR[IE]S AND BANK OF AMERICA, ACCEPT NEW TERMS OF THE ABOVE NOTED LOAN AT 3%, INTEREST ONLY; WITH NO PREPAY PENALTIES FOR THE REMAINDER OF THE LIFE OF THIS LOAN OF 28 YEARS, 6 MONTHS. THESE NEW TERMS ARE EFFECTIVE FROM THE DATE OF: 6 JUNE 2008 (DATE OF LAST PAYMENT RECEIVED.) THESE NEW TERMS ARE LEGAL AND BINDING AND AGREED UPON BY ALL ABOVE MENTION[ED] PARTIES. Additionally, Szmania attempted to enforce his unilateral loan modification by typing "Cashing this check is an acceptance of a 3% loan" on the front of the check and "Cashing & accepting this check is Countrywide's agreement & acceptance of 3% interest only with no [prepayment penalties] on loan # 155820689, for 28 years & 6 months" on the back of the check. Countrywide cashed the check. Szmania continued to send Countrywide monthly payments that reflected his proposed loan modification reducing the interest rate to 3 percent. Countrywide disputed Szmania's attempted loan modification, thus Countrywide began calculating a past due balance and late charges.

On August 20, [2008,] Szmania e-mailed Countrywide, claiming that a Countrywide employee named Ashley Harrison informed him on June 10 that a specialist would contact him within 30 days to answer his proposed loan modification request. Subsequent written and telephonic communication showed an ongoing dispute over whether Countrywide had accepted Szmania's proposed loan modification. On September 4, Countrywide sent Szmania a letter pointing out that, when Szmania submitted the proposed loan modification that Countrywide received on July 11, Szmania "agreed that the applicable interest rate for [his] loan was 6.25% per annum and that [his] loan was current. In short, [Szmania] did not dispute the amount due and owing and did not dispute" the applicable interest rate. Countrywide made it clear that it had not accepted Szmania's proposed loan modification and that his "attempt to work an accord and satisfaction must fail because there was no underlying disagreement about the sums actually due and owing under the law."

On September 9, Szmania insisted in another letter that a loan modification occurred and that he would not pay any late fees. In correspondence on November 12, Countrywide repeated that it had not accepted his proposed loan modification. Countrywide also provided an approved loan modification agreement for Szmania to review, sign, and mail back if he accepted Countrywide's proposed loan modification terms. Szmania did not accept Countrywide's proposal.

On November 11, [2008,] Swift Financial, one of Szmania's creditors, informed him that his account had been suspended due to unfavorable credit activity. The next day, Szmania filed a *pro se* complaint against Countrywide, along with a motion for a temporary restraining order (TRO) and a motion for summary judgment. Szmania asked that the trial court (1) restrain Countrywide

"from any and all foreclosure proceedings" in Washington, (2) have Washington's Attorney General's office review all foreclosures that occurred in Washington in the past 24 months, and (3) restrain Countrywide from securing new loans in Washington for 24 months. Szmania's summary judgment motion asserted that Countrywide agreed to his proposed loan modification.

On November 14, Szmania sent Countrywide a proposed loan modification agreement "finalizing those terms [C]ountrywide has already accepted" and stating that, after "receiving an accepted, certified copy" he would "cancel said civil action." On December 8, Szmania filed a notice of lis pendens against his property and again requested a TRO preventing Countrywide "from any and all foreclosures and securing new loans for two full years, due to its deceptive business practices," as well as "damages in the amount of $1,244,300.00 for falsely reporting to credit agencies and ruining [hi]s credit." Bank of America subsequently informed Szmania that it had reassigned his credit line because of a delinquency with one of his creditors.

Countrywide filed a motion to dismiss or for summary judgment, asserting that Szmania's "claims [were] based entirely on [his] theory that Countrywide agreed to a modification of [his] loan (on the terms requested by [him] ) by negotiating the monthly payment checks sent by [Szmania] on and after July 7, 2008, the date of [his] letter proposing a modification of the loan." Countrywide stated that it had a legal right to accept partial payments from Szmania and that it had repeatedly informed Szmania that it had not accepted his proposed modification. In addition, Countrywide argued that Szmania's claim that "he has a binding loan modification agreement with Countrywide also fails because any such agreement would be void under Washington's Statute of Frauds." Moreover, because there was no binding modification agreement, Countrywide could not be liable for damages as it acted properly in reporting Szmania's payment history to credit agencies. Countrywide also asked Szmania to "stipulate to the cancellation of the Lis Pendens" because "the referenced matter does not affect title to real property."

The trial court granted Countrywide's motion to remove Szmania's notice of lis pendens and awarded Countrywide attorney fees. It also denied Szmania's motion for a TRO.

On both January 30 and February 2, 2009, it appears that Szmania filed the same motion for reconsideration and for amendment of his summary judgment motion, asking the trial court to find "that the parties have a 3% interest only loan, effective 6 June 2008." On February 3, the trial court informed the parties by letter that it would grant Countrywide's summary judgment motion on all issues. Szmania then filed four motions, asking the trial court to (1) reconsider summary judgment to Countrywide on his request for RESPA damages, stating that the trial court erred in relying on 24 CFR 3500.21(e)(2)(ii) because it "is a total different document than RESPA" and is "the wrong part of the law," CP at 211; (2) discharge his debt to Countrywide because he had "never signed" any loan documents with Countrywide, CP at 220; (3) reconsider removal of the lis pendens and to reverse its attorney fees award arising from the lis pendens, and (4) vacate the deed of trust.

On February 27, [2009,] the trial court entered its orders on the pending matters. It (1) partially granted Countrywide's motion for summary judgment, dismissing with prejudice Szmania's claims that the loan modification occurred, that his loan account was current, and that he should not pay late fees; (2) denied Szmania's request for a TRO; (3) denied Szmania's request for damages under RESPA due to the loss in the value of his credit; (4) denied Szmania's request that he not be ordered to pay Countrywide attorney fees or costs; (5) denied Szmania's motion for reconsideration of its ruling on attorney fees and removal of the lis pendens and granted Countrywide attorney fees in the amount of $4,000; (6) denied Szmania's motion for reconsideration of its ruling on Szmania's motion for damages; and (8) denied Szmania's motion to vacate the deed of trust and his motion to discharge his debt to Countrywide, as it was not properly before the trial court; but the trial court noted that either party could address these issues in a motion under CR 56.

Subsequently, Szmania filed a summary judgment motion requesting that the debt he owed Countrywide be discharged, arguing again that there was no agreement between the parties. Countrywide filed a summary judgment motion requesting dismissal of all Szmania's remaining claims and causes of action.

The trial court (1) denied Szmania's request that it vacate the deed of trust and that it discharge his debt to Countrywide and (2) granted Countrywide's motion, effectively dismissing all of Szmania's claims. The trial court also entered the final judgment on the attorney fees award previously granted.

*Id.*(*internal citations omitted*).  Division II of the Washington Court of Appeals affirmed the trial court and dismissed the case.  *Id.*  The Washington Supreme Court denied Plaintiff's motion for discretionary review on June 7, 2011.  *Id.*

A few additional facts are relevant to the motions presented in this case.  According to the attachments to the Complaint, the "Adjustable Rate Note" ("Note") Plaintiff executed in favor of E-Loans, Inc. for this loan provides that Plaintiff "understand[s] that Lender may transfer this Note."  Dkt. 2, at 2.  Further, the "Deed of Trust," (also called "Security Instrument" in the Deed of Trust) provides that:

The Note or partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower.  A sale might result in a change in the entity (known as the "Loan Servicer") that collects periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security

Instrument, and applicable law.  There also might be one or more changes of the Loan Servicer unrelated to the sale of the Note.

Dkt. 2-1, at 33.

Plaintiff attaches a letter to his Complaint, dated January 16, 2007, to him from E-Loan, Inc.  Dkt. 2-1, at 2.  In this letter, E-Loan, Inc., informs Plaintiff that his current loan servicer, E-Loan, Inc., has been changed to Countywide Home Loans, Inc.  *Id.*  Plaintiff attaches a pleading to his Complaint which states that Bank of America purchased Countrywide Home Loans, Inc. in 2008 and then retired the "Countrywide" brand.  Dkt. 4, at 72.

Plaintiff further attaches several other documents to his Complaint which indicate that "BAC Home Loan Servicing, LP" services his loan.  *See e.g.* Dkt. 2, at 33, letter dated November 29, 2010, on Bank of America Home Loans letterhead ("BAC Home Loans Servicing, LP services your home loan"); Dkt.4 at 2, letter dated December 31, 2010, ("BAC Home Loans Servicing, LP services your home loan"); Dkt. 4 at 9 (MERS printout identifying BAC Home Loans Servicing, LP as "Servicer"); Dkt. 4 at 13, letter dated January 27, 2011, ("This communication is from BAC Home Loans Servicing, LP, the Bank of America Company that services your home loan . . . BAC Home Loans Servicing, LP, a subsidiary of Bank of America, N.A."); Dkt. 4, at 67, letter dated April 7, 2011, ("Thank you for contacting our office with your letter dated March 24, 2011, addressed to BAC Home Loans Servicing, LP ("BAC home Loans") a subsidiary of Bank of America, N.A.").  Of note, Plaintiff attaches a letter on Bank of America Home Loans' letterhead, dated May 21, 2009, informing Plaintiff that there was an assignment of his loan.  Dkt. 2-1, at 18.  This letter states that BAC Home Loans Servicing, LP services his loan, and that BAC Home Loans Servicing, LP is a subsidiary of Bank of America N.A. *Id.*

## B. PROCEDURAL HISTORY

Around two and a half months after the Washington Court of Appeals decision in *Szmania I,* on April 28, 2011, Plaintiff filed his 60 page Complaint, *pro se.* Dkt. 1. Plaintiff alleges in his Complaint that Defendant violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2605 and 2607; the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692; the "Revised Code of Washington;" and the "Uniform Commercial Code." *Id.* Plaintiff also makes claims for fraud, including mail fraud, and defamation. *Id.* The Complaint seeks declaratory relief, injunctive relief, damages, attorneys' fees and costs. *Id.*

Attorneys with the law firm of Lane Powell, PC filed a Notice of Appearance for "BAC Home Loans Servicing, LP (incorrectly sued as Bank of America Home Loans, Inc.)" on June 13, 2011. Dkt. 10. BAC Home Loans Servicing, LP merged into Bank of America, N.A., effective July 1, 2011. Dkt. 23, at 1.

## C. PENDING MOTIONS

Plaintiff has filed a Motion for Default Judgment, again asserting that "BAC" is a "fictitious name" and seeks default against "Bank of America Home Loans, Inc." for failing to appear or otherwise answer. Dkt. 17.

Plaintiff also moves for summary judgment on the same ground, arguing that "Bank of America Home Loans Servicing LP" is a "fictitious name, NOT Bank of America Home Loans, Inc., . . . which is named in this suit." Dkt. 12.

BAC Home Loans Servicing, LP filed a Motion to Dismiss on July 5, 2011. Dkt. 15. It argues that Plaintiff's claims are barred by *res judicata*/claim preclusion and should be dismissed. *Id.*

Plaintiff filed a pleading entitled "Motion to Quash Defendant's Motion to Dismiss," in which Plaintiff argues that *res judicata* does not apply to this case. Dkt. 18. This pleading should be treated as a response to BAC Home Loan Servicing, LP's Motion to Dismiss.

Plaintiff also filed a "Motion for Sanctions" against Defendant's attorney for "fraud in pleadings upon this Court." Dkt. 18-2. Plaintiff's motion for sanctions is related to pleadings filed in support of the Motion to Dismiss. *Id.*

BAC Home Loans Servicing, LP filed a combined opposition to Plaintiff's motion for a default judgment (Dkt. 17), motion to quash motion to dismiss (Dkt. 18), and motion for sanctions (Dkt. 18-2). Dkt. 23.

Plaintiff has also moved for a Declaratory Judgment and a Permanent Injunction. Dkt. 13. Plaintiff, in part, argues that he is "entitled to a declaratory judgment and a permanent injunction enjoining the Defendant from all collection activities on said note." *Id.,* at 6. Plaintiff also seeks to enjoin Defendant from reporting to any credit bureaus on this note, attempting to accelerate or foreclose on said note or deed of trust, and from further contacting Plaintiff and/or from communicating with a third party about this note and its debt. *Id.*

Plaintiff filed a Motion to Compel on July 19, 2011. Dkt. 26.

**D. ORGANIZATION OF OPINION**

The above pending motions will be addressed in the following order: Plaintiff's Motion for Default Judgment (Dkt. 17), Plaintiff's Motion for Summary Judgment (Dkt. 12 and 14), Defendant's Motion to Dismiss (Dkt. 15) with Plaintiff's Motion to Quash (Dkt. 18), Plaintiff's "Motion for Sanctions" against Defendant's attorney for "fraud in pleadings upon this Court" (Dkt. 18-2), Plaintiff's Motion for Declaratory Judgment and a Permanent Injunction (Dkt. 13), and lastly, Plaintiff's Motion to Compel (Dkt. 22).

## II. __DISCUSSION__

### A. PLAINTIFF'S MOTION FOR DEFAULT

Pursuant to Fed. R. Civ. Pro. 55(a), when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . . the clerk must enter the party's default."

Plaintiff's motion for default (Dkt. 17) should be denied. Plaintiff argues that he is entitled to a default judgment because the entity he named, "Bank of America Home Loans, Inc., ("BAC")" has failed to appear. Dkt. 17. Plaintiff argues that Lane Powell PC has appeared on "behalf of BAC Home Loans Servicing, LP a fictitious name." *Id.*

Plaintiff's claim is without merit. First, in Plaintiff's own pleadings before this Court and those he filed in the state courts, he uses various names for Defendant, including BAC Home Loans Servicing, LP. For example, he states in his Complaint that "Defendant, Bank of America Home Loans, BAC, ("BAC Servicing") or also known as: BAC Home Loans Servicing, LP ("BAC Servicing") hereafter BAC, is a Texas limited partnership with its principal place of business in Calabasas, CA. However, BAC headquarters and its [sic] CEO is in Charlotte, NC." Dkt. 1, at 2. Plaintiff then makes allegations in his complaint against "BAC" and/or "Defendant" regarding the servicing of his loan and subsequent reports to credit agencies. Dkt. 1.

Moreover, Division II of the Court of Appeals found that Countrywide had purchased the note and deed of trust from the original lender. *Szmania I,* at 1. Plaintiff acknowledges that Bank of America purchased Countrywide. Dkt. 1. He states in his Complaint that "Defendant purchased Countrywide Home Loans, Inc. (Countrywide) on or about January 11, 2008. Making it self [sic] a successor of Countrywide." Dkt. 1, at 13. In *Szmania I* the Court noted that he wrote a letter to attempting to get a loan modification to "COUNTRY WIDE FI[ ]ANANCIAL,

1   COUNTRYWIDE HOME LOANS, IT[ ]S AFFIL[I]ATES AND PARTNER[ ]S AND

2   SUBSID[I]AR[IE]S AND BANK OF AMERICA." *Id.* Plaintiff also attaches several pleadings

3   to his Complaint on Bank of America Home Loan's letterhead which indicate that BAC Home

4   Loans Servicing, LP services his loan, including a letter dated May 21, 2009. Dkt. 2-1, at 18, and

5   *See e.g.* Dkt. 2, at 33, letter dated November 29, 2010, ("BAC Home Loans Servicing, LP

6   services your home loan"); Dkt. 4 at 2, letter dated December 31, 2010, ("BAC Home Loans

7   Servicing, LP services your home loan"); Dkt. 4 at 9 (MERS printout identifying BAC Home

8   Loans Servicing, LP as "Servicer"); Dkt. 4 at 13, letter dated January 27, 2011, ("This

9   communication is from BAC Home Loans Servicing, LP, the Bank of America Company that

10  services your home loan . . . BAC Home Loans Servicing, LP, a subsidiary of Bank of America,

11  N.A."); Dkt. 4, at 67, letter dated April 7, 2011, ("Thank you for contacting our office with your

12  letter dated March 24, 2011, addressed to BAC Home Loans Servicing, LP ("BAC Home

13  Loans") a subsidiary of Bank of America, N.A.").

14          To the extent that Plaintiff attempts to argue that he is entitled to a default judgment

15  because BAC Home Loan Servicing, LP (or its successors) does not have the "authority to

16  collect on the Note" because E-Loans, Inc. did not give them "permission" his motion should be

17  denied. The Note and Deed of Trust, that Plaintiff executed in order to get this loan, explicitly

18  provides that the Note and Deed of Trust may be sold without notice to Plaintiff. Dkts. 2, at 2

19  and 2-1 at 33. Further, Plaintiff agreed to allow changes of loan servicer. *Id.* Defendant here

20  has pled and has otherwise defended. Plaintiff's motion for default should be denied.

21

22

23

24

## B.  PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### 1.  <u>Summary Judgment Standard</u>

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).  There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt.").  *See also* Fed.R.Civ.P. 56(e).  Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question.  The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases.  *Anderson*, 477 U.S. at 254, T.W. *Elect. Service Inc.*, 809 F.2d at 630.  The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party.  The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial

to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

### 2.  Plaintiff's Motion for Summary Judgment

Plaintiff's motion for summary judgment (Dkt. 12) should be denied.  In his motion for summary judgment, Plaintiff again calls "Bank of America Home Loans Servicing, LP" a "fictitious name" and objects to Lane Powell's Notice of Appearance for it, arguing that "no evidence exist [sic] in the record that Lane Powell has actually been employed by Bank of America Home Loans, Inc. . . . or that any nexus truly exist [sic] between the real party named in this case and the fictitious name." *Id.*  Plaintiff argues that he is entitled to summary judgment on the same ground asserted in the motion for default. *Id.*  For the reasons stated above denying Plaintiff's motion for default, Plaintiff's motion for summary judgment should also be denied.

### C.  DEFENDANT'S MOTION TO DISMISS AND PLAINTIFF'S MOTION TO QUASH DEFENDANT'S MOTION TO DISMISS

### 1.  Motion to Dismiss Standard

Federal Rule of Civil Procedure 8(a)(2) provides that a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Under Fed. R. Civ. P. 12 (b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted."  Dismissal of a complaint may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990).  While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and

a formulaic recitation of the elements of a cause of action will not do. *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007) (*internal citations omitted*).

Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*

*v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)(*citing Twombly*, at 570). A claim has "facial plausibility"

when the party seeking relief "pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Id.* First, "a court considering

a motion to dismiss can choose to begin by identifying pleadings that, because they are no more

than conclusions, are not entitled to the assumption of truth." *Id.*, at 1950. Secondly, "[w]hen

there are well-pleaded factual allegations, a court should assume their veracity and then

determine whether they plausibly give rise to an entitlement to relief." *Id.* "In sum, for a

complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable

inferences from that content, must be plausibly suggestive of a claim entitling the pleader to

relief." *Moss v. U.S. Secret Service,* 572 F.3d 962, 969 (9th Cir. 2009).

If a claim is based on a proper legal theory but fails to allege sufficient facts, the plaintiff

should be afforded the opportunity to amend the complaint before dismissal. *Keniston v.*

*Roberts*, 717 F.2d 1295, 1300 (9th Cir. 1983). If the claim is not based on a proper legal theory,

the claim should be dismissed. *Id.* "Dismissal without leave to amend is improper unless it is

clear, upon de novo review, that the complaint could not be saved by any amendment." *Moss v.*

*U.S. Secret Service,* 572 F.3d 962, 972 (9th Cir. 2009).

2.  Motion to Dismiss and Motion to Quash

Defendant argues that Plaintiff's Complaint should be dismissed because it is barred by *res*

*judicata*/claim preclusion. Dkt. 15. In his Motion to Quash Defendant's Motion to Dismiss,

Plaintiff again argues that "BAC Home Loans Servicing, LP" is a "fictitious name," so the Motion to Dismiss should be "quashed." Dkt. 18. Plaintiff then argues that *res judicata* should not apply. *Id.*

Plaintiff's Motion to Quash Defendant's Motion to Dismiss (Dkt. 18) should be denied. As stated above, Plaintiff's argument that BAC Home Loans Servicing, LP" is a "fictitious name" is without merit. The remainder of this pleading should be construed as a response to Defendant's Motion to Dismiss.

*Res judicata,* or claim preclusion, bars any subsequent suit on claims that were raised or could have been raised in a prior action. *Owens v. Kaiser Foundation Health Plan, Inc*., 244 F.3d 708, 713 (9th Cir. 2001). In determining whether to give preclusive effect to a state court judgment, under the Full Faith and Credit Act, 28 U.S.C. § 1738, federal courts are required to give state court judgments the preclusive effects they would be given by another court of that state. *Brodheim v. Cry*, 584 F.3d 1262 (9th Cir. 2009). In Washington, the party asserting collateral estoppel bears the burden of proving:

> (1) the issue decided in the prior adjudication is identical with the one presented in the second action; (2) the prior adjudication must have ended in a final judgment on the merits; (3) the party against whom [collateral estoppel] is asserted was a party or in privity with the party to the prior adjudication; and (4) application of the doctrine does not work an injustice.

*State v. Vasquez,* 148 Wash.2d 303, 308 (2002).

To the extent that Plaintiff asserts claims that were or could have been raised in *Szmania I*, (the prior action,) those claims should be dismissed with prejudice as barred by *res judicata*. The superior court entered the final judgment in *Szmania I* on July 9, 2009. Dkt. 16-1, at 10.

a. *Identity of Claims*

To the extent Plaintiff makes RESPA, FDCPA, fraud and other claims, based on events occurring before July 9, 2009, in this case, the claims are identical to the claims that were raised in *Szmania I,* (or could have been raised) and should be dismissed. Further, to the extent Plaintiff bases his claims on the allegations that Defendant does not have "authority" to collect on the Note, report delinquencies to the credit agencies, or act as his loan servicer, his claims should be dismissed.

Plaintiff's Complaint here states "the Defendant has been illegally reporting to the credit bureaus since before March 8, 2010, in a negative manner even though they have no legal standing to collect monies on my mortgage NOTE . . . This is in clear violation of FDCPA." Dkt. 1. Plaintiff alleges in his Complaint that Defendant committed fraud under the FDCPA when it tried to collect payment from him, implying that E-Loans had given it permission to do so when that was "100% false and fraud." *Id.* Plaintiff alleges that Defendant has "no legal standing," "no privity of note or deed," there has been no "legal assignment." *Id.* Plaintiff alleges that Defendant committed fraud on May 21, 2009, by responding to a letter addressed to E-Loans, by falsely reporting to credit bureaus, sending collections letters on "a debt they have no legal right to collect payments on." *Id.* Plaintiff asserts a cause of action for "defamation" alleging that Defendant "falsely" reported delinquencies to the credit bureaus, damaging Plaintiff's "credit worthiness." *Id.*

Plaintiff has raised these claims before in *Szmania I.* In *Szmania I*, Plaintiff argued that Countrywide violated RESPA by reporting the delinquency on his account to credit agencies within 60 days of receiving a qualified written request. *Id.*, at 5. The Washington Courts rejected this argument because "a written request does not constitute a qualified written request if it is delivered to a servicer more than one year after . . . the date of transfer of servicing." *Id., at*

6.  Plaintiff further argued, in part, that the trial court in *Szmanai I* should have "discharged the debt he owes to Countrywide because (1) '[t]here is NO written contract between the [parties],' and (2) Countrywide 'has never offered any proof of material facts that the said assignment or any transfer of agency truly occurred between E-Loan Inc. and Countrywide." *Id.,* at 8.  Division II rejected these arguments, found that "Countrywide purchased the loan from E–Loan; this purchase included the adjustable rate note, the deed of trust, and the right to service the loan." *Id.,* at 1.  Division II found that even after selling the loan, Countrywide "retained the servicing rights." *Id.*  It found that Plaintiff had failed to provide any authority for his propositions and failed to show any basis upon which to discharge the debt. *Id.*, at 8-9.  Even before the superior court entered its final judgment on July 9, 2009, by at least May 21, 2009, Plaintiff was informed that BAC Home Loans Servicing, LP took over the servicing of his loan, as evidenced by Plaintiff's own pleadings.  Dkt. 2-1, at 18.  Plaintiff's claim that Defendant does not have the authority to collect on the Note and Deed of Trust is another version of the "show me the note argument" for which he again offers no supporting authority and was explicitly rejected by the Washington Court of Appeals.

To the extent that Plaintiff alleges Defendant is violating various statutes by continuing to report to various credit agencies that he is delinquent on his account based on the amounts due before the July 9, 2009, final judgment, his claims should be dismissed.  Even liberally construing the Complaint, there is no basis to conclude that Plaintiffs' allegations relate to any other debt or transaction, and should be dismissed.

Further, Plaintiff appears to raise claims related to correspondence from Defendant dated after the July 9, 2009, final judgment, but based again on the same argument that Defendant does not have the authority to act as his loan servicer.  Dkt. 1.  For example, he alleges that Defendant,

in the notice dated November 29, 2010, did not "validate" the debt with the "amount and name of the debtor" and so violated the FDCPA. Dkt. 1, at 10. Plaintiff alleges that he sent "Qualified Written Requests" disputing the debt, one, in particular, asserting to Defendant that:

> I received your November 29, 2010 payment request on December 8, 2010.
> I sent you my first QWR on December 8, 2010, received by you on December 13, 2010, demanding you cease & desist all collections activities and correct the wrong & illegal credit entries on by credit bureaus that have been done since March 8, 2010.
> I than received you December 16, 2010 form letter on December 21, 2010. In this letter you have failed to prove any privity back to E-Loan, (the original note maker) that Bank of America hereafter BAC, has any legal right to collect payments on a Note that I have with E-Loan, dated November 6, 2006.
> All you did was enclose copies of said Note and Deed which does not prove BACV has a legal standing to collect payments! All it proves is either you have a copy machine or you ordered my public records from a title company, which anyone can do.

Dkt. 3, at 7. To the extent that Plaintiff asserts these claims based on the factual premise that Defendant does not have the authority to collect on his Note or act as his loan servicer, these claims are barred by *res judicata*.

### b. *Final Judgment on the Merits*

The superior court entered the final judgment on July 9, 2009. Dkt. 16-1, at 10-12. Plaintiff's arguments that the pleading entitled "Final Judgment," was not a final judgment because it only deals with the *lis pendens* and attorneys fees, is without merit. The Court of Appeals noted that those were the last matters that the superior court had to decide. A final judgment on the merits was entered by the superior court on July 9, 2009.

### c. *Identity of Privity Between the Parties*

As has been discussed extensively above, the parties in the prior suit are identical or in privity with each other. The Plaintiff is the same. Plaintiff acknowledges in his Complaint that "Defendant purchased Countrywide Home Loans, Inc. (Countrywide) on or about January 11,

2008. Making it self [sic] a successor of Countrywide." Dkt. 1, at 13. Plaintiff's meritless

contentions aside, the Plaintiff is the same as in the prior suit and the Defendant is in privity with

Countrywide. Further, Plaintiff's own pleadings indicate that by May 21, 2009, he was aware

that Defendant had become his new servicer. Dkt. 2-1, at 18.

### d. *Application of the Doctrine Does Not Work Injustice*

Application of the doctrine here does not work injustice. As noted by the Washington Court

of Appeals, Plaintiff failed to fully honor his obligations under the note. After his loan servicer,

then Countrywide, reported him to the credit bureaus, he filed suit against them, raising the same

arguments he asserts here.

### e. *Conclusion*

To the extent Plaintiff makes claims under RESPA, the FDCPA and for fraud or other

statutes, based on events occurring before July 9, 2009, in this case, the claims are identical to

the claims that were raised in *Szmania I,* (or could have been raised) and should be dismissed as

barred by *res judicata*. The issues were the same, the parties or their privities identical, and the

case ended in a final judgment on the merits. No injustice would result from application of the

doctrine. Likewise, to the extent Plaintiff bases his claims on the allegation that Defendant does

not have "authority" to collect on the Note, report delinquencies to the credit agencies, or act as

his loan servicer, his claims should be dismissed as barred by *res judicata*. To the extent that

Plaintiff makes claims based on his allegation that Defendant is violating various statutes by

continuing to report to various credit agencies that he is delinquent on his account based on the

amounts due before the July 9, 2009, final judgment, his claims should be dismissed as barred by

*res judicata*.

It is wholly unclear whether Plaintiff makes any claims which are not barred by *res judicata*. In an effort to fully and fairly give Plaintiff an opportunity to be heard, Plaintiff, if he so chooses, should be afforded an opportunity to file, on or before September 9, 2011, an amended complaint under the following conditions:  any such amended complaint should be limited to 10 pages, clearly state the claims, and the factual and the legal basis for each claim.  Defendant's Motion to Dismiss will be continued and the allegations in the amended complaint, if any, will be considered in light of the record and this order, on or after September 12, 2011.  If further briefing from the parties would be helpful, the Court will request it.

### D.  PLAINTIFF'S MOTION FOR SANCTIONS

Fed. R. Civ. P. 11 (b) provides:

> By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Plaintiff's "Motion for Sanctions" against Defendant's attorney for "fraud in pleadings upon this Court" (Dkt. 18-2), related to pleadings filed in support of the Motion to Dismiss, should be denied.  In this motion, Plaintiff once again objects to the appearance of Lane Powell PC on behalf of the Defendant.  *Id.*  Plaintiff argues further that the Defendant's counsel's

statement that the final judgment was entered in the state court on July 9, 2009, was false, the document referred to was not a final judgment, and that "[t]he Defendant is trying to pull a fast one on this Court!" *Id.,* at 3. He continues,

> This is the core of what is wrong with our great nation today. We have large companies like Bank of America illegally and unjustly enriching themselves by collecting payments they have no legal standing in. This fraud is further perpetuated by using attorney's [sic] such as Lane Powell here that are willing to commit perjury and fraud for the sake of their own wealth. . .

*Id.,* at 3. Plaintiff has failed to make any showing that Defendant's assertion regarding the final judgment in the state court merits sanctions under Rule 11. He has failed to show that the evidence was presented for an improper purpose, that the claim it supported was not warranted by existing law, or that there was no evidentiary support for the contention it advanced. Plaintiff's motion for sanctions should be denied.

## E. PLAINTIFF'S MOTION FOR PERMANENT INJUNCTION AND DECLARATORY JUDGMENT

The basic function of such injunctive relief is to preserve the *status quo* pending a determination of the action on the merits. *Los Angeles Memorial Coliseum Com'n v. National Football League*, 634 F.2d 1197, 1200 (9th Cir. 1980). A party "seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 20 (2008). In addition to success on the merits, "the balance of the equities and consideration of the public interest – are pertinent in assessing the propriety of any injunctive relief, preliminary or permanent." *Id.,* at 32. The Ninth Circuit has recently held, that under *Winter*, where there are "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff" a preliminary injunction can be issued, "so long as the plaintiff also shows that there is

a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-1135 (9th Cir. 2011).

In Plaintiff's Motion for Declaratory Judgment and a Permanent Injunction, he argues that he is "entitled to a declaratory judgment and a permanent injunction enjoining the Defendant from all collection activities on said note." Dkt. 13, at 6. Plaintiff also seeks to enjoin Defendant from reporting to any credit bureaus on this note, attempting to accelerate or foreclose on said note or deed of trust, and from further contacting Plaintiff and/or from communicating with a third party about this note and its debt. *Id.* Plaintiff argues that he is entitled to such relief because "Defendant has no legal standing in the Note or Deed of Trust," and that Defendant has not shown that it has "a right to collect payments on behalf of E-Loan," or that Defendant purchased the Note for E-loan. Dkt. 13.

Plaintiff's motion for permanent injunctive relief and declaratory relief should be denied. As above, the claims for which he seeks injunctive relief are barred by *res judicata*. Even if they were not barred, Plaintiff makes no showing that he is in any manner entitled to the relief he seeks, or that there are serious questions going to the merits of his claims.

Moreover, to the extent he seeks a preliminary injunction, in addition to failing to show that there are serious questions going to the merits of his claims, he has failed to show that the balance of equities tips sharply in his favor. *Alliance for the Wild Rockies*, at 1134-1135. He does not allege that Defendant erred in calculation of the payments made on the note, or that he have actually made the payments that Defendant alleges (and the Washington State Court of Appeals, Division II found) are past due pursuant to the note and so he has not shown that the balance of equities tips in his favor. Lastly, Plaintiff has not shown that issuance of an injunction here is in the public interest. It is not in the public interest to interfere with ordinary business

matters in the absence of strict and complete showing of the justification for such interference. Plaintiff's Motion for Declaratory Judgment and a Permanent Injunction (Dkt. 13) should be denied.

### F. PLAINTIFF'S MOTION TO COMPEL

Fed. R. Civ. P. 26(b)(1) provides:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense--including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Plaintiff's Motion to Compel (Dkt. 22) should be denied. In his motion, Plaintiff moves for an order compelling "Lane Powell PC and the Defendant to file proof of being retained by Bank of America Home Loans, Inc." *Id.* First, Plaintiff makes no showing that he attempted to acquire this information through regular discovery channels. Second, Plaintiff makes no showing that even if he had requested the information it would be in any manner relevant to his claims or defenses, or that it "appears reasonably calculated to lead to the discovery of admissible evidence." Third, Plaintiff makes no showing that he has standing to contest counsel's representation of the Defendant where the Defendant does not object.

### III.   ORDER

o   Plaintiff's Motion for Summary Judgment (Dkts. 12 and 14) **IS DENIED**;

o   Plaintiff's Motion for Default Judgment (Dkt. 17) **IS DENIED**;

o   BAC Home Loans Servicing, LP's Motion to Dismiss (Dkt. 15) **IS GRANTED**;

o   Plaintiff's Motion to Quash Defendant's Motion to Dismiss (18) **IS DENIED**;

1    o   Plaintiff's Motion for Sanctions (Dkt. 18-2) **IS DENIED;**

2    o   Plaintiff's Motion for a Permanent Injunction (Dkt. 13) **IS DENIED**;

3    o   Plaintiff's Motion to Compel (Dkt. 22) **IS DENIED;**

4    o   Plaintiff, if he so chooses, may file, on or before September 9, 2011, an amended

5          complaint under the following conditions:  any such amended complaint **SHALL** be

6          limited to 10 pages, clearly state the claims, and the factual and the legal basis for each

7          claim.

8    o   Defendant's Motion to Dismiss (Dkt. 15) will be continued and the allegations in the

9          amended complaint, if any, will be considered in light of the record and this order, on or

10         after **September 12, 2011**.  If further briefing from the parties would be helpful, the

11         Court will request it.

12        The Clerk is directed to send uncertified copies of this Order to all counsel of record and

13  to any party appearing *pro se* at said party's last known address.

14        Dated this 30th day of August, 2011.

15

16               _Robert J Bryan_

17               ROBERT J. BRYAN
                   United States District Judge

18

19

20

21

22

23

24